ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.*

GARNER.

Opinion delivered March 22, 1909.

1. RAILROADS—INJURY AT CROSSING—CONTRIBUTORY NEGLIGENCE.—Where a traveller is injured by a train at a crossing, it is a question for the jury whether he took proper precautions for his own safety by looking and listening for the approach of trains unless the undisputed evidence shows that he did not do so. (Page 21.)

2. SAME—CONTRIBUTORY NEGLIGENCE.—Where the testimony shows that deceased both looked and listened for the approach of trains at a crossing, and was prevented from discovering an approaching train by reason of its rapid approach and the fact that his vision was obscured by the escape of steam from a locomotive standing near him, even though by the exercise of greater care he might have discovered the danger, it was a question for the jury whether he was negligent. (Page 22.)·

3. INSTRUCTIONS—REPETITION.—The trial court's refusal to give certain instructions asked by appellant was not erroneous if their substance was given in others requested by appellant. (Page 23.)

4. DAMAGES—MEASURE OF—VALUE OF LIFE.—An instruction upon the measure of damages for the taking of life, after correctly stating to the jury the matters which they should consider in measuring the damages, concluded with the following statement: *"All of these are proper elements for your consideration in determining the value of the life taken."* *Held,* that the instruction meant that in awarding damages the jury should consider the matters named for the purpose of determining the value of decedent's life to those dependent on him, and that it was not objectionable. (Page 23.)

Appeal from Independence Circuit Court; *Frederick D. Fulkerson,* Judge; affirmed.

*E. B. Kinsworthy* and *Lewis Rhoton,* for appellant.

1. The deceased was guilty of contributory negligence such as to bar a recovery. He failed to look and listen. 65 Ark. 235; 54 *Id.* 431; 56 *Id.* 439; 62 *Id.* 158; Elliott on Railroads, § 1166; 69 Ark. 134; 76 *Id.* 224.

2. It is not necessary to give the 5th instruction, and especially objectionable are the words "in determining the value of the life taken." Kirby's Digest, § 6290; 68 Ark. 1.

*J. B. Baker* and *McCaleb & Reeder,* for appellee.

1. The jury has settled the question of negligence, and there is ample evidence to sustain' it. The signals required by law were not given. Kirby's Digest, § 6595.

2. The burden was on appellant to show contributory negligence, and it totally failed to do so. 62 Ark. 156; 78 *Id.* 55; 79 *Id.* 241; 86 Ark. 183; 88 Ark. 231; 74 Ark. 372.

3. A higher degree of care is required of railroads in running trains at a high rate of speed through a town than in the open country. 81 Ark. 187; 76 *Id.* 100.

4. Instructions need not be repeated. The instructions asked by appellant were given in substance in others. 88 Ark. 177; 87 Ark. 602.

5. The 5th instruction was proper. By making no objections to *the elements* to be taken into consideration in arriving at the verdict, it is admitted that all of the elements of damage set forth were correct. 57 Ark. 314; 60 *Id.* 558. If the verbiage was not satisfactory, the court should have been asked to correct it. 65 Ark. 255; 73 *Id.* 530; *Ib.* 594.

McCulloch, C. J. The railway company appeals from a judgment rendered against it in favor of appellee, Garner, as administrator of the estate of T. E. Jett, deceased, for damages caused by the death of said decedent. Jett was killed on the crossing at Judsonia, Ark., by a fast mail train which was south-bound and was running at a speed variously estimated at from fifty to seventy-five miles per hour. He was engaged in the business of buying and selling cattle, and had a lot of cattle in appellant's stock pens near the station of Judsonia. At the time of the injury a long south-bound freight train had reached the station, and was standing on a side track, which was eight feet distant from the main track, awaiting the passing of the fast mail train. The front of the freight engine was within a few feet—from five to eight feet—of the edge of a road crossing just south of the station. Jett and his companion, Allen, after feeding and salting his stock in the pens, started to return to the station, and in doing so it was necessary to pass in front of the freight engine and to cross the track at the road crossing. Jett was slightly in front of Allen, and was struck by the mail train and instantly killed. Allen discovered the approaching train just in time to step back and avoid it. The testimony shows that at that time

the freight engine was making considerable noise by popping off steam, and that considerable steam was escaping from the engine.

Allen testified that as he and Jett started across they checked up just a moment and looked for trains. He said that the engine around which they passed was blowing off steam, and that steam was escaping all around them. He said that they also listened to see if they could hear the train coming. Another witness testified that as the two men started across they hesitated or checked up, as if they were looking or listening for trains. Allen also testified that there was nothing to obscure their view except the escaping steam; and his and the testimony of other witnesses show that the track was perfectly straight for a mile or two. It may be taken as undisputed that but for the escaping steam there was nothing to hinder or obstruct the view along the track, or to prevent Jett and Allen from seeing the approaching train. There was evidence sufficient to justify the finding that the servants of the railway company in charge of the fast mail train were guilty of negligence in failing to give the statutory signal; and the only question in the case, so far as the sufficiency of the evidence is concerned, is whether or not it can be said as a matter of law, that Jett was guilty of contributory negligence in failing to discover the approaching train.

There is no direct evidence that Jett did not look and listen for trains on the main track. On the contrary, there is evidence to the effect that he did look and listen. Appellant insists that the court should have taken the case from the jury by a peremptory instruction. We think that the testimony presented an issue of fact for the jury to determine, and the court committed no error in submitting it to the jury.

It is too well established by the decisions of this court to need the citation of authority that a traveler along a highway, attempting to cross a railroad track, must look and listen for the approach of trains, otherwise he is guilty of contributory negligence, and can not recover damages on account of injury resulting therefrom. Unless, however, the undisputed evidence shows that the traveler did not look and listen, then it is a question of fact for the jury to determine, from all the facts and circumstances, whether the precautions which he exercised in

that respect were sufficient to acquit him of any charge of negligence.

In the present case the evidence tends to show that Jett did both look and listen for the approaching train. The jury were warranted in finding that he exercised the necessary precaution, but was prevented from discovering the approaching train on account of its rapid approach and the fact that his vision was obscured by the escaping steam from the freight engine. The jury might well have found that it was negligent for him, under the circumstances, to attempt to cross while the steam was escaping, but that was a question of fact for the jury and not one of law for the court. We can not say as a matter of law that he was bound to abandon the crossing for the time because the freight engine was emitting steam which might have obscured to some extent his vision. He may, as a reasonably prudent person, have thought that the escaping steam would not interfere seriously with his discovering a train on the other track, and yet he might have been mistaken about this, or his vision may have been obscured by a sudden and unexpected volume of steam. We are of the opinion that where the evidence shows, as it does in this case, that the deceased was making some effort to discover dangers on the track over which he was attempting to pass, and that the escaping steam brought about a condition which might have prevented his discovering the danger, even though by the exercise of greater care he might have discovered it, it was peculiarly a question for the jury to determine whether, under all the circumstances, the deceased acted as a prudent person or whether he was guilty of negligence in attempting to cross, under those circumstances.

The case of *St. Louis, I. M. & S. Ry. Co.* v. *Robert Hitt*, 76 Ark. 227, was a suit to recover damages for injuries at a crossing while plaintiff and his companion were attempting to cross the track at night in a covered wagon. They stopped the wagon 82 feet from the crossing and looked and listened, and then attempted to drive across. The same contention was made as in this case—that the travelers were guilty of contributory negligence as a matter of law, and that the trial court should have so declared in a peremptory instruction. This court, speaking through Mr. Chief Justice HILL, said: "While it is true the sheet

of the wagon obstructed the vision on either side, and in a measure the hearing, yet they believed from their investigation that the way was clear, and they continued to look ahead and listen. The electric arc light and the headlight of the freight engine, casting their rays on the crossing, might well tend to prevent the discovery of the light from the headlight of the approaching train. The situation confronting Mr. Hitt was not such as requires the court to say, as a matter of law, that it was *per se* negligence, under the circumstances, to attempt to cross the track. The ringing bell or sounding whistle would doubtless have given the warning of the approaching train, which was not otherwise apparent to Mr. Hitt or his son. These are facts from which fair-minded men may draw different conclusions as to whether the care exercised was proportional to the danger to be avoided, and such as the situation called for from men of prudence and caution. When such are the facts of a case, then the question must be settled by a jury, under proper instructions." To the same effect, see *St. Louis, I. M. & S. Ry. Co.* v. *Johnson,* 74 Ark. 372; *Chicago, R. I. & P. Ry. Co.* v. *Moon,* 88 Ark 231; *Choctaw O. & G. Rd. Co.* v. *Baskin,* 78 Ark. 355; *Louisiana & Ark. Ry. Co.* v. *Ratcliffe,* 88 Ark. 524.

Error of the court is assigned in its refusal to give the third, ninth and thirteenth instructions requested. The substance of these instructions was given in others requested by appellant, and there was no error in the refusal to give these. The court gave very full and specific instructions, requested by appellant, on the subject of contributory negligence. We think that appellant has no cause for complaint in the rulings of the court in this respect.

Error is also assigned in the giving of an instruction requested by appellee on the measure of damages. This instruction, after correctly stating to the jury the matters which they should consider in measuring the damages, concluded with the following statement: "All of these are proper elements for your consideration in determining the value of the life taken." The instruction is criticised because of the use of the words "value of the life taken," and in support of this contention the language of Judge RIDDICK is quoted, in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Dawson,* 68 Ark. 1, in which he said that "in assessing

damages for wrongs causing death the law does not undertake to find a sum equal to the value of the life of the deceased, or for which the person killed would have voluntarily suffered death." We do not think that this language can be construed to support the contention of counsel. In that case Judge Riddick said that the value of one's own life could not be taken as a criterion for measuring damages, for, as he went on to say, a person's life is a priceless gift which would not be surrendered for the value of an entire railroad. What the court meant in this instruction was that, in awarding damages, the jury should consider the matters named for the purpose of determining the value of decedent's life to his dependents. In this sense the language was entirely correct, and was approved by this court in *Railway Company* v. *Sweet,* 60 Ark. 558.

We find no error in the record, and the verdict was warranted by the evidence. The recovery in this case was far less than it might have been under the evidence if the appellant was liable at all for the injury.

Judgment affirmed.