ARKANSAS & LOUISIANA RAILWAY COMPANY *v.* GRAVES.

Opinion delivered December 5, 1910.

1. RAILROADS—FAILURE TO SIGNAL AT CROSSING—LIABILITY.—Where the negligence of defendant's trainmen in failing to give the statutory signals of the approach of a train to an established crossing was the cause of plaintiff's injuries, the defendant will be liable if plaintiff was not a trespasser nor guilty of contributory negligence. (Page 641.)

2. SAME—INJURIES NOT AT CROSSING—LIABILITY.—One who was injured by defendant's train while crossing its track at a place which had been openly and notoriously used by the public as a crossing for many years, though it had not been established as a public crossing, is not a trespasser, and the defendant owed him the duty to exercise ordinary care not to injure him while crossing the track. (Page 642.)

3. SAME—FAILURE TO KEEP LOOKOUT.—Evidence that defendant's trainmen failed to keep a lookout while backing an engine and cars across a place which for many years had been openly used as a crossing and approach to defendant's depot platform, and that plaintiff was injured in consequence thereof, was sufficient to support a finding that defendant was negligent. (Page 642.)

4. SAME—TRAVELER APPROACHING TRACK—DUE CARE.—Ordinarily it is negligence for one approaching a railroad track at a crossing to fail to look and listen for the approach of trains; and he is deemed to have discovered whatever could have been plainly seen by looking and whatever could have been heard by listening. (Page 643.)

5. SAME—CONTRIBUTORY NEGLIGENCE—WHEN FOR JURY.—Where there was evidence that the plaintiff, before he attempted to cross defendant's side track, "slowed up," and looked and listened for the train, that he heard the noise of the engine beyond the depot, but thought it was on the main track, that his view was obstructed, that he was near a public crossing, and that no signals of the train's approach had been given, it was a question for the jury whether he was negligent. (Page 643.)

6. SAME—FAILURE TO SIGNAL AS CAUSE OF INJURY.—Evidence that plaintiff was injured at a place other than a public crossing, but near thereto, so that he could have heard the statutory signals if they had been given and could have been warned if the trainmen had been keeping a lookout will sustain a finding that the failure to give such signals or to keep a lookout was the proximate cause of his injuries. (Page 643.)

7. INSTRUCTIONS—EFFECT OF SPECIFIC OBJECTION.—Where appellant's objection to a particular instruction was to a specific part of it, it cannot insist on appeal that another part of the instruction was erroneous. (Page 644.)

8. RAILROADS—DUTY TO STOP, LOOK AND LISTEN.—It was not error to refuse to instruct to the effect that it is the duty of one going upon

a railroad track to stop as well as to look and listen, as there is no necessity to stop where one can look and listen without doing so. (Page 645.)

Appeal from Howard Circuit Court; *James S. Steel,* Judge; affirmed.

*W. E. Hemingway, E. B. Kinsworthy, W. V. Tompkins* and *James H. Stevenson,* for appellant.

1. The statutory duty to give signals for the protection of persons at highway crossings does not apply to any except *public highways,* and if, in this case, there was a failure to give signals, it was not negligence. Kirby's Dig. § 6595; 3 Yeates (Pa.) 417, 421; 3 Ore. 97; 8 Pac. 907; 7 N. Y. Sup. Ct. 289, 312; 7 Pick, (Mass.) 162, 164; 3 Elliott, Railroads, 335, § 1158; 64 N. Y. 535; 189 Ill. 559; 62 Md. 479.

2. The use which the evidence shows was made of the place as a crossing did not make it a public or highway crossing, nor give appellant a right thereon. He was a trespasser, or at most a bare licensee to whom the company owed no affirmative duty of warning. 3 Elliott on Railroads, § 1154; 44 Pa. St. 375, 379; 103 Ind. 27; 97 Ky. 228; 42 Ill. App. 93; 49 Ill. App. 232; 189 Ill. 559, 564; 70 Ga. 240, 241.

3. Appellant's own contributory negligence bars recovery. It was his duty to stop and look and listen, and that duty was the more imperative since he knew that there was an engine in motion in the yards. Since he knew this, there was no necessity that he be given formal notice by bell and whistle, nor would the law require it. 2 White on Personal Injuries, § 966; 3 Elliott on Railroads, § 1155; 70 Ga. 207; 84 Ark. 270; 56 Ark. 457; *Id.* 271; 54 Ark. 431; 62 Ark. 245.

*W. P. Feazel,* for appellee.

1. If it be conceded that appellee was not on a public crossing where he was injured, appellant was nevertheless under the duty to give the statutory warning, because the train was approaching a public street crossing within a few feet of appellant. 125 S. W. (Ark.) 655. The word road or street does not mean a public highway only. 123 Ill. 570; 5 Am. St. Rep. 559; 98 Am. Dec. 347 and cases cited in note; 90 *Id.* 55, 67. Where a railroad company has long permitted the public to cross its tracks at a place not a highway, it is bound to use reasonable care towards persons so crossing and to give warning to them so as to protect

them from injury.  104 N. Y. 362; 58 Am. Rep. 512; 99 N. C. 298; 6 Am. St. Rep. 512; 45 O. St. 11; 4 Am. St. Rep. and cases cited in note 526; 112 Ind. 250; 109 N. C. 472; 26 Am. St. Rep. 581; 64 *Id.* 453; 33 Cyc. 924.

2.  The question whether or not appellee was, under the facts and circumstances of this case, a trespasser, or was crossing at this point by the sufferance and permission, if not by the implied invitation, of appellant, was for the jury to determine from the evidence.  85 Ark. 331; 94 Fed. 323; 23 Am. & Eng. Enc. of L., 742; 86 Ark. 184; 77 Ark. 562.  If he was not a trespasser, his injury by appellant's train would cast upon it the burden of proving that it was not negligent.  63 Ark. 639; 57 Ark. 136; 53 Ark. 203.

3.  In attempting to cross appellant's track, all that the law required of appellee was to look and listen to ascertain if a train was approaching and to exercise such ordinary care and diligence as a man of ordinary care and prudence would have done under similar circumstances to avoid being injured.

McCulloch, C. J.  Plaintiff J. F. Graves instituted this action against defendant railway company to recover compensation for injuries alleged to have been sustained by being knocked down by one of defendant's trains while he was crossing the tracks near the depot at Nashville, Ark.  Negligence of the company's servants is alleged in failing to keep a lookout, and in failing to give signals by bell or whistle.  Plaintiff was crossing a side track at the southwest corner of the depot platform, and was struck by a freight car against which an engine backed and set in motion while being coupled to the train.  There was a space there of 18 feet between the platform and a seed house, and the plaintiff adduced evidence tending to show that for many years past people openly and habitually crossed there afoot and with teams without objection from the railway company.  There is a street running north and south parallel with the side-track, and the evidence tends to show that at the point mentioned the space is used for a crossing from this street to the station platform and to the premises of the company.  The space was used, according to some of the evidence, as a means of access to the premises of the company, and this was with the permission, of, or at least without objection from, the company.

Plaintiff testified that the crossing was open, and was used clear across the right-of-way, but all the other witnesses testified that the way was closed on the east side, so that there was no access from that side. The testimony is conflicting as to whether or not there was a crossing on the sidetrack at that place, but there was sufficient to warrant a finding as stated above.

According to the undisputed evidence, there was a public street crossing over defendant's tracks, both the side track and the main track, about 40 feet south of the place mentioned on the south side of the seed house just described. The main track is on the east side of the depot, and the side track is on the west side.

On this occasion a mixed passenger train came in from the south, and, after stopping for a while (Nashville being the northern terminus of the railroad), the engine and two cars were uncoupled from the train and pulled up to a switch north of the depot, and then backed down the side track for the purpose of coupling to two cars standing near the place where plaintiff was injured. Plaintiff was a mail and express carrier, and had come to the depot to meet the train to see about some express which had come for him, and was leaving the premises to go to another railroad depot nearby. In attempting to do so he started across the side track at the place mentioned, and was struck by one of the cars pushed by the backing engine. The corner of the car struck him just as he got across the track. He testified that before going on the side track he "slowed up," looked and listened for an approaching train, but neither saw nor heard one approaching, and proceeded to go across. He stated that he heard the noise of the engine running above the depot, but thought that it was still over on the main line. The depot platform was four or five feet high, and plaintiff testified that a lot of boxes of freight piled on and extending over the corner of the platform obstructed his view to some extent up the side track. The evidence tends to establish the fact that no signals were given, and no lookout was kept.

It is insisted that the evidence does not sustain the verdict in plaintiff's favor in that it fails to establish negligence on the part of defendant's servants, and that it does indisputedly establish contributory negligence on the part of plaintiff. The contention, as to the charge of negligence against defendant in

failing to give signals, is that the statutory requirement as to giving signals applies only to legally established public road crossings, and that there is no evidence to show that the place where plaintiff received his injuries was such a crossing. The argument entirely ignores the fact that there was a public street crossing about 40 feet south of the place where plaintiff was struck by the train, that the engine and cars were approaching that crossing, and that the trainmen were then under legal obligation to give the signals for that crossing—that is to say, to keep the bell or whistle sounding until the crossing was reached or the train stopped. Therefore, the point which learned counsel argue with so much earnestness, that the statutory requirements do not apply except to legally established road crossings, is not reached in this case. If the trainmen were guilty of negligence in the particular named, which caused plaintiff's injury, and if plaintiff was not a trespasser, and was not guilty of contributory negligence, then defendant is liable for the damages. *St. Louis, I. M. & S. Ry. Co.* v. *Shaw,* 94 Ark. 15; *St. Louis, I. M. & S. Ry. Co.* v. *Hudson,* 86 Ark. 183.

The evidence tends to show that the place where the plaintiff was injured had for many years—in fact, since the railroad was first put into operation—been openly and notoriously used by the public as a crossing, and that it was used as one of the approaches to the depot platform. Those who used the crossing did so not only by the permission but upon the implied invitation of the company, and the latter's servants owed them the duty of exercising ordinary care to avoid injury. *Moody* v. *St. Louis, I. M. & S. Ry. Co.,* 89 Ark. 103; *Missouri & N. A. Rd. Co.* v. *Bratton,* 85 Ark. 326. The plaintiff on this occasion came to the depot on business with the company, and had the right to leave the premises by the route commonly used by the public under permission from the company. He was not a trespasser, and the servants of the company were under duty to exercise care not to injure him while he was crossing the track.

There was also evidence of negligence on the part of the trainmen in failing to keep a lookout while backing the engine and cars down the side track. *St. Louis, I. M. & S. Ry. Co.* v. *Sparks,* 81 Ark. 187.

There was sufficient evidence to justify a submission to the jury of the question whether plaintiff was guilty of contributory

negligence. We can not say, as a matter of law, that under the evidence adduced he was guilty of negligence. He testified that before he attempted to cross the track he "slowed up," looked and listened for the train; that he heard the noise of the engine running above the depot, but thought it was on the main track. His view up the side track was to some extent obstructed by boxes of freight piled on the platform and also by the two freight cars standing on the side track.

A railroad track being a place of danger, it is the duty of one about to cross a track to look and listen for the approach of trains, and it is held in law, except under special circumstances which excuse the omission, to be negligent for a traveller to fail to observe those precautions. It is generally a question for the determination of the trial jury whether or not, under a given state of facts, the degree of vigilance in looking and listening was sufficient to amount to ordinary prudence for one's safety. The traveller is, however, deemed to have discovered whatever could have been plainly seen by looking and whatever could have been heard by listening. *St. Louis, I. M. & S. Ry. Co.* v. *Johnson,* 74 Ark. 372; *St. Louis, I. M. & S. Ry. Co.* v. *Dillard,* 78 Ark. 520.

The evidence in this case justified a finding by the jury that plaintiff did look and listen with the vigilance of an ordinarily prudent person, and that, without any negligence in this respect on his part, he failed to discover the approach of the train. Plaintiff admitted that he heard the engine running above the depot, but it was for the jury to determine whether or not it was reasonable for him to have been misled in supposing that the engine was on the main track, where he had last seen it. He had a right to rely to some extent on the giving of signals, and the jury could take that into consideration in determining whether or not he was in the exercise of ordinary care in attempting to cross the track.

The jury was warranted in finding, too, that the failure to give signals was the proximate cause of the injury, for, notwithstanding the plaintiff knew that the engine was running above the depot, the giving of signals would have apprised him of its approach. If a lookout had been kept, plaintiff would have been discovered and warned when he attempted to cross. We conclude that the evidence was sufficient to sustain the verdict.

The court gave the following instruction, the giving of which is now assigned as error: "7. It was the duty of the plaintiff in attempting to cross the defendant's track to look and listen, to ascertain if the train was approaching, to the end that he might avoid a collision and to otherwise use ordinary care to prevent his being injured. So in this case, if you find from the evidence that, before plaintiff attempted to cross defendant's track, he did look and listen for the approach of the train and exercised such ordinary care and diligence as a man of ordinary prudence would do under similar circumstances, and if you further believe that by reason of the failure of the defendant to give the proper signals or by reason of plaintiff's view up the track being obstructed he failed to discover or hear the approach of the train without fault on his part and was struck by said train and injured while attempting to cross, you will find for the plaintiff."

The serious defect in this instruction is in telling the jury in the latter part thereof that if, "by reason of plaintiff's view up the track being obstructed, he failed to discover or hear the approach of the train," the defendant would be liable. We can not understand why this language was used, for in considering the other instructions given it is not thought that the court could have meant to say that the failure of plaintiff, on account of the obstructions, to see up the track would render the defendant liable. It is probable that in framing this instruction it was intended to use the conjunctive participle "and" instead of the disjunctive "or," so as to make the instruction state the law to be that if, by reason of negligence of the trainmen in failing to give signals, and by reason of the plaintiff's view being obstructed, he did not, though in the exercise of due care, discover the approach of the train, defendant would be liable. Learned counsel for defendant must have so construed the instruction at the time it was given, for they did not object to that part of it. They objected only to the first half of the instruction, on the ground, specifically stated in their objection, that plaintiff knew that the train was running and the trainmen were not bound to give signals to warn him. The objection to the other half of the instruction can not be made here for the first time. There was no general objection to the whole instruction.

Error is assigned in the refusal of the court to give the following instructions asked by defendant:

"3. You are told that the defendant and the public each have the right to use a public crossing; and that it is the duty of a railroad company to sound the whistle or ring the bell before it runs a train over a public crossing; but this duty applies only to persons lawfully using or about to use the public crossings. So, in this case, if you find that the plaintiff was struck by the train at a place not a public crossing, then the defendant owed him no duty to sound the whistle or ring the bell, and if it failed to do so it was not negligence."

"10. You are also told that the law requiring notice to be given of the approach of trains to public crossings is for the protection of persons using, or about to use, such crossings, and has no application to persons not using nor about to use them. So, in this case, if you believe from the evidence that the plaintiff was attempting to cross the track at a place other than the public crossing, then the failure of the defendant to sound the whistle or ring the bell, if it did so fail, was not negligence."

The weakness of defendant's contention, even if the statutory requirements for the giving of signals be held to apply only to legally established public crossings, is in assuming that because plaintiff was not at such a crossing defendant owed him no duty of protection. We have already shown the fallacy of this contention, for, if there was a duty to give signals on approaching a public crossing, and plaintiff, while at another place where he had a right to be, and in the exercise of care, was injured by reason of such omission to give signals, defendant was liable.

Error is also assigned in modifying, by striking out the italicized words, the following instruction requested by defendant: "4. You are told that a railroad track is a perpetual reminder of danger, and it is negligence for one to go upon a track without looking and listening, *and, if necessary, stopping* to ascertain if a train is approaching. So in this case, if you find from the evidence that the plaintiff went upon the track without exercising these precautions and was injured, and that he would not have been injured if he had done so, your verdict should be for the defendant."

The question of the necessity for stopping to look or listen for a train has no place in this case. Plaintiff was walking when he attempted to cross the track and was injured. He says that he "slowed up" and looked and listened, and heard the engine,

but thought it was on the main track. Under the facts of this case, there could have been no necessity for stopping to look and listen, as plaintiff's senses of sight and hearing could as effectually have been exercised while walking along slowly as if he had stopped. Moreover, if the instruction had been given with the omitted words in it, the latter part would have been misleading in stating that if the plaintiff "went upon the track without exercising these precautions" he could not recover. The words "these precautions" might have been understood to mean to stop for the purpose of looking and listening, and imposed on plaintiff the duty of stopping, even though he would have availed nothing to have done so.

There are other exceptions to the giving and refusal of instructions, but the views we have already expressed as to the law and facts of the case fully dispose of all of the exceptions. We find no error. Judgment affirmed.